Frank R. Bayger, J.
Pursuant to an eavesdropping warrant issued under section, 815 of the Code of Criminal Procedure by a Judge of this court on September 9, 1969, Buffalo police officers intercepted and recorded telephone conversations of one Joseph Lombardo on telephones listed as 837-9497 and 836-0540. The warrant authorized their interception of Lombardo’s conversations relating to his acceptance and/or ‘ ‘ lay off ’ ’ of unlawful wagers. One intercepted conversation allegedly took place on October 5, 1969 between Lombardo and this defendant. Based primarily on the evidence and leads obtained through that interception, a search warrant for this defendant’s premises and a warrant for his arrest were thereafter obtained, by virtue of which the defendant was arrested and his residence searched on October 25, 1969. Evidence uncovered at that time has resulted in the present charge of felonious possession of gambling records in violation of section 225.20 of the Penal Law.
A review of the affidavit underlying the eavesdropping warrant suggests that it was properly issued as to Lombardo. No mention was made of this defendant, however, nor was the warrant ever amended so as to include this defendant or the contents of his conversation of October 5, 1969.
The defendant has moved under section 813-1 of the code for an order suppressing the People’s use of the contents of that conversation or any of the fruits thereof, on the grounds that it constituted an unlawful interception and seizure of his conversation in violation of the Fourth Amendment to the United States Constitution and section 12 of article I of the New York Constitution. He argues that while this eavesdropping warrant might lawfully authorize the interception of Lombardo’s conversations as they related to bookmaking, it may not constitutionally allow the interception and use of the conversation of *601 other, undescribed, persons who are party to communications either initiated or received over the designated telephone.
The People have relied upon the substantial compliance with our eavesdropping statute and that line of authority which holds that ‘ ‘ objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence ” (People v. Ruffino, 62 Misc 2d 653, 659). I do not believe the issue may be so easily resolved.
The pros and cons of electronic eavesdropping, including wiretapping, have been debated by countless legislators, innumerable scholars and many eminent jurists. The value and/or usefulness of such surveillance to law enforcement is as easily recognized and vigorously championed by some as is the inherent danger to personal liberty which is so frequently stressed by others. It is not my place however to argue or weigh the relative merits of either case. My responsibility is to determine according to applicable law the precise issue presented in this case, an issue which to my knowledge has not been previously argued or determined in this or any other jurisdiction.
The United States Supreme Court’s concern with the dangers to personal constitutional liberties inherent in electronic eavesdropping has long been apparent even in those cases wherein its use has been sanctioned. This concern and the ever-increasing and often improper use of such sophisticated surveillance finally led the court to hold that a person’s private conversations are within the purview of the Fourth Amendment and that the interception and recording of such conversation constitute a ‘1 search and seizure ’ ’ within the meaning of that amendment. (Berger v. New York, 388 U. S. 41; Katz v. United States, 389 U. S. 347.) It must therefore be held in this case that the officers’ interception and recording of Gnozzo’s telephone conversation of October 5, 1969 constituted a search and seizure of that communication within the meaning of both the Fourth Amendment to the United States Constitution and the identical provision of New York’s Constitution.
The Fourth Amendment to the United States Constitution and the first paragraph of section 12 of article I of New York’s Constitution identically provide that: “ The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
*602 Our constitutional provision additionally decrees that: “ The right of the people to be secure against unreasonable interception of telephone and telegraph communications shall not be violated, and ex parte orders or warrants shall issue only upon oath or affirmation that there is reasonable ground to believe that evidence of crime may be thus obtained, and identifying the particular means of communication, and particularly describing the person or persons whose communications are to be intercepted and the purpose thereof.”
The question presented in this case is whether the seizure and use of Gnozzo’s conversation is permissible under these constitutional mandates.
The standing of this defendant to object on constitutional grounds to the officers’ seizure and use of his conversation cannot be and is not disputed. (Alderman v. United States, 394 U. S. 165; Matter of Selig, 32 A D 2d 213.)
It seems equally well settled that the constitutional right to be free from unreasonable searches and seizures is a personal right individually enjoyed by each and every person. The Fourth Amendment’s protection “reaches all alike, whether accused of crime or not ” (Weeks v. United States, 232 U. S. 383, 392). It “protects people, not places” (Katz v. United States, supra, p. 351). The basic purpose of the Fourth Amendment was to prohibit our Government’s use of the notorious ‘1 general warrants ’ ’ and was intended and designed to safeguard the privacy and security of individuals against all arbitrary intrusions by government. (Berger v. New York, supra.) This right of privacy thus guaranteed to every individual by the Fourth Amendment is of course enforceable against the States by virtue of the Fourteenth Amendment (Mapp v. Ohio, 367 U. S. 643) and, as noted above, has now been held to include the right to privately converse with others without interception by uninvited ears. (Berger v. New York, supra; Katz v. United States, supra.)
The persorial, individual nature of that right was most recently recognized by the Supreme Court in Alderman v. United States (394 U. S. 165). There the court was concerned with the question of standing to object to the use of evidence acquired or tainted by illegal eavesdropping. In determining that only parties to the illegally intercepted conversation, or a person whose constitutionally protected premises was invaded, had standing to object, the court reaffirmed “ the general rule that Fourth Amendment rights are personal rights which * * * may not be vicariously asserted” (supra, p. 174; emphasis added.) Under this rule, aside from the property interest *603 exception, only the “victim ” of the illegal search — the person whose conversation was seized — may properly object to that violation of his constitutionally created right of privacy. In thus limiting the right to object to an illegal interception of a private conversation to the parties to that conversation, the court obviously recognized a separate individual right of privacy in each party to the conversation, a right which may not be violated as to either party except in accordance with constitutional standards.
The individual enforceability and personal nature of this right to privately converse with others was also implicitly recognized by the court in Berger (388 U. S. 41, 59, supra) when it said, of our former statute’s requirement that the warrant particularly describe the person or persons whose conversation was to be recorded, “ But this does no more than identify the person whose constitutionally protected area is to be invaded ”.
If then this defendant had his own constitutionally recognized, purely personal right to privately converse with Lombardo, and I believe our highest court has so held, then he should be entitled under the Fourth Amendment to be secure in that right from any unconsented to seizure of his conversation except upon authority of a warrant supported by probable cause and particularly describing this defendant and the nature of his conversation sought to be seized. To hold otherwise would deny to this defendant the protection afforded to every individual by the Fourth Amendment and deprive him of his further constitutional right to the equal protection of our law. (U. S. Const., 14th Arndt.)
The affidavit underlying this warrant related solely to the activities of the suspect Lombardo and offered no semblance of probable cause as to the defendant Gnozzo. The warrant is similarly restricted in application to a seizure of Lombardo’s conversations. Neither the affidavits nor the warrant in any way relate to, identify, or in any way describe the defendant Gnozzo. His existence is never alluded to. If the command of the Fourth Amendment is to have any meaningful significance as to this defendant, the officers’ seizure and use of his conversation may not be allowed.
It is this indiscriminate reach of wiretapping that has so long 0been the subject of judicial concern. (Cf. Justice Brandéis’ dissent, Olmstead v. United States, 277 U. S. 438, 471.) In this case, by tapping Lombardo’s phones, the police were privy to every incoming or outgoing call over those lines regardless of the identity or character of the speaker or the innocent, confidential, privileged or irrelevant nature of the conversations *604 overheard. Such indiscriminate, dragnet type of surveillance is clearly contrary to the spirit and tone of Berger and Katz. It in no way conforms to the carefully circumscribed eavesdropping described or cited with approval in those cases.
The undeniable purpose and effect of Berger and Katz was to make applicable to electronic eavesdropping the same constitutional requirements as apply to conventional warrants. Eavesdropping warrants therefore require the same antecedent showing of probable cause and the same particularity of description of the person whose constitutional privacy is to be invaded and the same particularity of description with respect to the “ thing ” (conversation) that is to be seized.
That there was no factual showing or probable cause as to the defendant Gnozzo in this case is not disputed. That he was not identified or in any way described in the warrant is apparent on its face. The law applicable to conventional search warrants and warrants of arrest is too well settled to require further recitation here. The affidavits underlying this warrant would not justify the issuance of a warrant for Gnozzo’s arrest or a warrant to search his person or premises. Nor does this warrant in any way describe Gnozzo or purport to authorize the officers’ seizure of his conversation. Their interception and use of Gnozzo’s conversation was therefore impermissible under established constitutional standards.
I am not unmindful of the community’s interest in effective detection, prevention and prosecution of criminal activity. I share their interest and desires in that regard. But, as stated by our highest court, I ‘ ‘ cannot forgive the requirements of the Fourth Amendment in the name of law enforcement.” (Berger v. New York, 388 U. S. 41, 62, supra.)
The defendant’s motion is therefore granted.